Wendy J. Earle, Esq. ISB #7821
**WENDY EARLE, LAW OFFICE LLC**
120 E. Lake Street, Suite 205
Sandpoint, ID 83864
T: (208) 597-3400 * Fax (208) 263-5169
wearle@idahowashingtonlawpractice.com
*Counsel for Plaintiff: Roland Harter*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROLAND HARTER,<br><br>   Plaintiff,<br> vs.<br><br>BONNER COUNTY, IDAHO, a political subdivision of the State of Idaho,<br><br>   Defendant. | Case No.: 2:16-CV-0546-DCN<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE**<br>[Dkt. No. 66 ]<br><br>The Honorable Judge David C. Nye<br>[Trial Scheduled: October 3, 2019] |

Mr. Harter ("Harter" or "Plaintiff") by and through his counsel Wendy J. Earle, hereby submits this Memorandum in Support of his Motion *in limine* and respectfully requests an Order in advance of the August 19, 2019 final settlement deadline and the September 1, 2019 Motions *in limine* deadline, as this sole issue is determinative as to how damages will be presented at trial. *See* Order Setting Jury Trial (Dkt. 65).[1] Specifically, Plaintiff requests that this Court exclude all evidence of Mr. Harter's receipt of Public Employees Retirement System of Idaho ("PERSI") funds as a collateral source limiting his recovery of damages resulting from his former employer, Defendant Bonner County pursuant to Federal Rules of Evidence Rule 403.

---

[1] Plaintiff reserves the right to bring a future Motion in Limine on other trial issues. Both Plaintiff and Defendant are submitting cross-Motions on the sole issue of collateral source and PERSI benefits at this time.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                                            -1

## I. RELEVANT FACTS

This case involves an employee terminated by Bonner County on July 14, 2016. *See* Pl's Statement of Facts, para 11. (Dkt. # 34). Harter worked for Bonner County's Solid Waste Department for more than 18 years prior to his ultimate termination, which occurred without the benefit of an underlying explanation. *Id*. Prior to his termination, Harter had filed a Charge of Age Discrimination with the Idaho Human Rights Commission (IHRC) on December 30, 2015. Pl's Memorandum in Opposition to Motion for Summary Judgment at 1. (Dkt. #46).

Plaintiff's ensuing First Amended Complaint ("Amended Complaint") was filed on February 1, 2017. (Dkt. # 50). Based on the Court's October 2, 2018 summary judgment ruling, the following claims will be presented to the jury at trial (Dkt. # 58):

(1) Bonner County's ("County") violated Title VII of the Civil Rights Act of 1964 ("Title VII") because its 2016 termination of Harter was retaliatory.

(2) Harter's procedural Due Process rights, stemming from the 2016 discharge, were violated pursuant to 42 U.S.C. §1983.

An exhaustive search of Idaho District Court case opinions indicates that Harter's request for an Order excluding all evidence of Harter's PERSI funds as a collateral source presents a matter of first impression in Idaho. The issue of PERSI benefits as an offset to compensatory damages for loss of past wages and future damages has been injected into this case by the County's economic expert. *See*, Declaration of Wendy J. Earle. ("Earle Decl.") at Ex. 1, filed herewith. Considerable disagreement exists between the parties' economic experts' opinions and conclusions as to the value of a compensatory award for Harter's past lost wages and future lost damages award based on the inclusion or exclusion of PERSI funds.

During his employment with the County, Harter elected to become a member of PERSI. Earle Decl. at Ex. 2. In August 2016, shortly after his termination and newly obtained employment at COLVICO in Spokane, he chose to receive PERSI pension benefits to make up for the $10.24 per hour wage loss resulting from his discharge by the County. *Id.*

## II. ISSUES PRESENTED

I.  Whether Plaintiff's PERSI benefits fall within the collateral source rule because they are partially funded by his former employer's contributions as well as his contributions, and PERSI does not constitute a wholly independent source of funds?

II.  Should Defendant's conflicting economic expert's testimony and expert report be excluded pursuant to FRE 403 as to the PERSI benefit offset, which limits Plaintiff's potential damages?

III.  In federal actions where state substantive law (*e.g.,* I.C. § 6-1606 and *Dyet v. McKinley,* 139 Idaho 526 (2003) [2] is to prevent a double payment from "collateral sources," do State or Federal Rules of Evidence govern the admissibility of evidence on that issue?

## III. ARGUMENT

### A.   Motion in Limine Standard

A motion *in limine* is a mechanism to limit testimony or evidence before a trial begins. *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). An *in limine* order precluding evidence or testimony is an evidentiary ruling, and a district court has discretion in ruling on a motion in limine. *Id*. "A motion *in limine* is a procedural mechanism to limit testimony or evidence *in a particular area.*" State v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009) (Italics added). *In limine* rulings are preliminary and "are not binding on the trial judge [who] may

---

[2] See Appendix A

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                             -3

always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 (2000). When a party anticipates the use of prejudicial evidence by the opposing party, it is helpful to get a pretrial ruling on the Rule 403 question. 1 Federal Rules of Evidence Manual § 403.02 (2019).

      **B.**    **Harter's PERSI Benefits are a Collateral Source.**

Under the collateral source rule, "benefits received by the plaintiff from source collateral to the defendant may not be used to reduce that defendant's liability for damages." 1 Dan B. Dobbs, LAW OF REMEDIES § 3.8(1) at 372-73 (2d ed. 1993); accord *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 346-47 (9th Cir. 1982). The primary justifications for the collateral source rule are that the defendant should not get a windfall for collateral benefits received by the plaintiff, and the defendant should not profit from benefits for which the plaintiff has herself paid. *See, e.g.*, *Siverson v. United States*, 710 F.2d 557, 560 (9th Cir.1983); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 534 (9th Cir.1962) ("As between the injured person and the tortfeasor, the former's claim is the better. . . . The tortfeasor bears only the single burden for his wrong. That burden is imposed by society . . . to deter" wrongful conduct).

In considering damage awards arising specifically under Title VII, the Ninth Circuit has ruled that "benefits received by the plaintiff from sources collateral to the defendant **may not be used to reduce** that defendant's liability for damages." *McLean v. Runyon*, 222 F.3d 1150, 1156 (9th Cir. 2000) (emphasis added). The *McLean* court observed that "[o]ur precedent is not absolutely clear as to whether a district court has discretion to deduct collateral benefits from a damages award under Title VII." *Id.*, 222 F.3d at 1156, n.7 (recognizing the tension in past authority); *accord, Kauffman*, 695 F.2d at 347 (unemployment benefits received by a Plaintiff are not back pay offsets in a successful Title VII claim).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE    -4

The Ninth Circuit has no published Title VII decisions specifically defining PERSI benefits as a collateral source. The distinction between an unfunded general fund, such as the fund at issue in *McLean*, and a fund where contributions are provided in part by the employee is determinative.

*Siverson*, 710 F.2d at 560 is instructive. The *Siverson* Court addressed the impact of such a distinction, albeit in the realm of a personal injury award not a Title VII award. In *Siverson*, the plaintiff received medical care that rendered him quadriplegic. *Id*. at 559. He received compensatory damages that were not offset by his Medicare benefits. *Id*. at 560. The court held that Medicare expenses could not be deducted from the plaintiff's damage award because he contributed to his Medicare through Social Security contributions. *Id*. In rendering its decision, the Court stated, "[C]ourts distinguish between those benefits that come from unfunded general revenues of the United States (deductible) and those that come from "a special fund supplied *in part* by the beneficiary or a relative upon whom the beneficiary is dependent" (nondeductible). *Id*. 560, *citing United States v. Harue Hayashi*, 282 F.2d 599, 603 (9th Cir. 1960) (emphasis in the original) (social security insurance benefits are not deductible).

Because PERSI benefits are analogous to the retirement funds at issue in *Siverson* (in that PERSI is funded partially by employee contributions) Harter's benefits should be treated as a collateral source.

1. **Retirement Benefits Fall within the Collateral Source Rule.**

Other jurisdictions have considered similar challenges to awards invoking the collateral source rule. The Sixth Circuit considered whether retirement benefits fall within the collateral source rule in an employment discharge case arising under the Americans with Disabilities Act

of 1990, 42 U.S.C. §12101. *Hamlin v. Charter Tp. of Flint*, 165 F.3d 426 (1999). [3]The Court clarified that the collateral source rule is a substantive rule of law that bars tortfeasors from reducing damages owed to plaintiff. *Id*. at 433, citing *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir.1994). [4]The *Hamlin* Court considered defendant's request to reduce a damage award to an assistant fire chief employed by the town of Flint. *Id*. at 429. Defendant sought to offset the discharged fire chief's disability pension payments; however, the Court looked to prior Sixth Circuit decisions and held that the retirement benefits were collateral source benefits. The *Hamlin* Court referenced decisions from the Eighth and Seventh Circuits that supported their decision:

> These decisions of our court are consistent with the holdings in other circuits. *See, e.g.*, *Doyne v. Union Elec. Co.*, 953 F.2d 447, 451–52 (8th Cir.1992) [5] (finding that pension payments from a collateral source should not have been deducted from the plaintiff's jury verdict in an age discrimination case); *EEOC v. O'Grady*, 857 F.2d 383, 389 (7th Cir.1988)[6] (affirming the district court's refusal to offset pension benefits from an age discrimination award).

*Id*. at 435.

In reaching its final decision regarding the application of the collateral source rule, the *Hamlin* Court used a test put forth by the Fifth Circuit in an employment case:

> [T]he following factors [are used] to determine whether pension benefits are collateral:
>
> (1) whether the employee makes any contribution to funding of the disability payment; (2) whether the benefit plan arises as the result of a collective bargaining agreement; (3) whether the plan and payments thereunder cover both

---

[3] See Appendix C
[4] See Appendix D
[5] See Appendix E
[6] See Appendix F

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                                    -6

work-related and nonwork-related injuries; (4) whether payments from the plan are contingent upon length of service of the employee; and (5) whether the plan contains any specific language contemplating a set-off of benefits received under the plan against a judgment received in a tort action.

*Id.*; *relying on Phillips v. Western Company of North America*, 953 F.2d 923, 932 (5th Cir. 1992). [7]

By applying each of the five factors in turn the Court concluded that the discharged employee's disability pension benefits fell within the scope of the collateral source. *Id.*

Many, if not all, of *Hamlin's* five factors apply by analogy to the present case. In Idaho, like in *Hamlin*, PERSI benefits are a creature of statute. I.C. §59-1301 et. seq. Public employees contribute in part to funding discrete PERSI benefits for purposes of deferred compensation. *Id.* The state controller is authorized to make such deductions from salary for any employee of the state who has authorized such deductions in writing." *Id*. Such contributions are akin to employee contributions made for purposes of deferred disability pension payments.

Harter made discrete contributions to the funding of his PERSI plan, which he elected to participate in. Earle Decl. at Ex. 2. The County contracted with Harter to enter into the plan. The dollar amount of Harter's deferred benefits received from PERSI was contingent on the length of his employment. *Id*. There is no provision in I.C. § 59-1301 *et. seq.,* that contemplates a setoff of benefits received from an employee in an employment action against an employer.

    2.    **PERSI Benefits are a wholly independent source of deferred income and not designed to be used as liability coverage.**

---

[7] See Appendix G

Under the collateral source rule, an "employer-tortfeasor is not entitled to mitigate damages by setting off compensation received by the employee from an independent source . . . . The source of the funds may be determined to be collateral or independent, even though the employer-tortfeasor supplies such funds." *Haughton v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972). [8] Import should be placed on "the character of the benefit received and what such benefits were designed to do." *Haughton*, 462 F.2d at 790. If the fund from which the employee is drawing compensation is not provided to be used for liability coverage, but instead is "in effect part of the employee's income for services rendered," that fund is a collateral source". *Haughton*, 462 F.2d at 791. Accordingly, the main question is whether the benefit paid for by the tortfeasor was intended to respond to potential future legal liability. *See Phillips,* 953 F. 2d at 932.

Plaintiff was employed by Defendant for 18 years. He elected to become a member of PERSI and now receives retirement funds from PERSI. Idaho's objective for maintaining a PERSI fund is identified in the agency's published member handbook. It is to "[P]rovide a sound retirement system and high quality service and education to help Idaho public employees build a secure retirement." *See*, Second Declaration of Wendy Earle. The sole purpose of the "retirement system" is "[T]o provide pension benefits to career public employees." *Id.*  Harter's pension benefits were never intended for his employer's potential legal liability. Moreover, PERSI clearly characterizes his retirement funds as "pension benefits."  Harter's PERSI benefits fall under the collateral source rule. Because these payments are not paid directly from and entirely by the County, but a third-party source, the payment cannot be used in the back pay or front pay calculation.

---

[8] <u>See</u> Appendix H

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                                      -8

A handful of unpublished decisions in other circuits support the holdings in the preceding cases. *See e.g. Murrell-Travland v. On Q Fin., Inc.*, 2013 U.S. Dist. LEXIS 106553 \*; 2013 WL 3930133. [9]In *Travland*, a United States District Court for the District of Arizona stated:

> In the absence of any argument or evidence that unemployment benefits are not truly a "collateral source," this Court follows Kauffman. Its language is clear that state unemployment benefits should not be deducted from any award of back pay [\*10] under Title VII. 695 F.2d at 347. That case is the most factually similar, since it involved an award under Title VII while Naton involved a different statute, and it is the Ninth Circuit's latest pronouncement on the topic. Therefore, the Court makes no deduction for the state unemployment or disability benefits awarded to Travland.

*Id.* at \*10-11.

### 3. **Collateral Sources Should Not be Deducted Because This Encourages Illegal Employer Discrimination**.

One of the two surviving Harter claims arises out of Title VII and contends the 2016 termination of Harter was retaliatory. The Ninth Circuit has held that "[t]he purpose of section 2000e–3's participation clause 'is to protect the employee who utilizes the tools provided by Congress to protect his rights.'" *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir.1990), *quoting Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir.1978).

In an Eighth Circuit employment discrimination case, *Moysis v. DTG Datanet*, 278 F.3d 819 (8th Cir. 2002) [10], the Court applied the "collateral source rule." The Court held that worker's compensation benefits are a collateral source that should not be deducted from a back pay award noting the rule "gains in significance in the context of

---

[9] See Appendix I
[10] See Appendix K

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                                              -9

employment discrimination claims." *Id.* at 828, *citing Gaworski v. ITT Comm. Fin. Corp.*,(8th Cir.), *cert. denied*, 513 U.S. 946, (1994) [11] (unemployment benefits are not a collateral source because back pay awards not only serve to make a victim whole, they also "deter future discrimination") *Id.* at 1113. Likewise, the County should not be rewarded for a retaliatory discharge by availing itself of the collateral source rule to offset Harter's PERSI benefits.

**C. This Court should exclude all testimony and references to Harter's receipt of PERSI Benefits funds as an offset because it unfairly prejudices Plaintiff and confuses the jury.**

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. Rules Evid. Rule 403.

A Ninth Circuit decision involving evidentiary challenges in an employment discrimination case provides additional guidance:

> All relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. A court may exclude relevant evidence, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

*Baker v. Delta Air Lines*, 6 F.3d 632 (1993 U.S. App.).

---

[11] See Appendix L

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                    -10

Harter's PERSI benefits are a collateral source and this Court should exclude all evidence of Mr. Harter's receipt of Public Employees Retirement System of Idaho ("PERSI") pursuant to FRE 403. By treating a PERSI benefit as a collateral source, the danger of prejudice contemplated in FRE 403 is avoided, and the jury will not be influenced by testimony to the contrary.

In a U.S. Supreme Court case (preceding enactment of the Federal Rules of Evidence) the Court explained that collateral source evidence is prejudicial "[B]ecause collateral source evidence is 'readily subject to misuse by a jury,' the likelihood of misuse 'clearly outweighs' the value of such evidence" in most cases. *Eichel v. New York Central R. Co*., 375 U.S. 253, 255, 84 S. Ct. 316, 11 L. Ed. 2d 307 (1963)). A First Circuit Court concurs with this analysis and has stated that evidence of collateral source payments is admissible under the Federal Rules of Evidence " [U]nless its probative value is substantially outweighed by the danger of unfair prejudice. *See England v. Reinauer Transp. Cos*., 194 F.3d 265, 273-74 (1st Cir. 1999). [12]

Harter's PERSI benefits are a collateral source and even with cautionary jury instructions, there is substantial danger that the jurors will take the evidence into account in assessing the damages to be awarded to an injured plaintiff. Thus, introduction of the evidence on a limited admissibility theory creates the danger of circumventing the policies underlying the collateral source rule. Admission despite such ominous potential should be permitted only upon a persuasive showing that the evidence sought to be introduced is of substantial probative value

**D. Idaho State Law**

As a general rule, Idaho substantive law permits admission of evidence regarding collateral source payments in personal injury cases. *See* I.C. § 6-1606 *also Dyet*, 139 Idaho 526

---

[12] See Appendix M

(2003). I. C. § 6-1606 lays out the limiting circumstances for double recovery claims under the "collateral source rule" but does not specifically reference PERSI benefits or employment actions that falls into one of the limiting circumstances. Thus evidence of collateral source payments such as pension benefits derived from PERSI is not subject to a presumption of exclusion.

*Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980) is instructive in resolving the interface between federal and state law. There, the Court applied federal rules of evidence in a Federal Tort Claims Act case despite the fact that state law provided the substantive rule of decision. *Id. See also, England v. Reinauer Transp. Cos., L.P.*, 194 F.3d 265, 273 (1st Cir. 1999) ("When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403").

Mr. Harter's PERSI benefits are collateral source benefits. The cause of action underlying this Motion *in limine* is lodged in federal court. Thus, exclusion of testimony referencing Mr. Harter's receipt of pension benefits as an "offset" to his employer Bonner County is governed by the Federal Rules of Evidence not, Idaho substantive law.

## CONCLUSION

For the reasons explained above, Mr. Harter respectfully requests that the Court enter an Order *in limine* that evidence regarding, or in reference to, Plaintiff's receipt of funds from his Idaho deferred public employee retirement compensation fund ("PERSI") is inadmissible at trial as a collateral source.

///

///

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE                                    -12

Respectfully submitted this 1st day of July, 2019.

       WENDY EARLE, LAW LLC

       <u>s/ Wendy J. Earle</u>
       Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019 a true and correct copy of the foregoing pleading was served on the following electronically via the CM/ECF system:

Kara Heikilla                    KLH@witherspoonkelley.com
WITHERSPOON KELLEY
608 Northwest Blvd. Suite 300
Coeur d'Alene, Idaho


By: s/ Wendy J. Earle
Wendy J. Earle